IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-103

 No. COA18-536-2

 Filed 6 April 2021

 Dare County, Nos. 16CRS000267, -050291; 17CRS000010

 STATE OF NORTH CAROLINA

 v.

 GREGORY JEROME WYNN, JR., Defendant.

 Appeal by defendant from judgments entered on or about 15 November 2017

 by Judge Jerry R. Tillett in Superior Court, Dare County. Heard in the Court of

 Appeals 13 February 2019 and opinion filed 5 March 2019. Remanded to this Court

 by order of the North Carolina Supreme Court for further consideration in light of

 State v. Golder, 374 N.C. 238, 839 S.E.2d 782 (2020).

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Matthew Tulchin, for the State.

 Anne Bleyman, for defendant-appellant.

 STROUD, Chief Judge.

¶1 On remand from the North Carolina Supreme Court, we review defendant’s

 first argument on appeal in accordance with State v. Golder, 374 N.C. 238, 839 S.E.2d

 782 (2020). We conclude there was not sufficient evidence of a firearm, and thus

 defendant’s conviction for possession of a firearm by a felon must be vacated. We also

 conclude there was sufficient evidence of constructive possession of controlled
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 substances, and thus defendant’s convictions for trafficking in heroin by possession,

 possession with the intent to sell or deliver a controlled substance, and attaining the

 status of habitual felon, remain intact. There is no error in the judgments entered

 for trafficking in heroin by possession, possession with the intent to sell or deliver a

 controlled substance, and attaining the status of habitual felon,

 I. Background

¶2 We begin with the procedural and factual background of this case.

 A. Procedural Background

¶3 Defendant appealed “his convictions for possession of a firearm by a felon,

 trafficking in heroin by possession, possession with the intent to sell or deliver

 cocaine, and attaining the status of habitual felon.” State v. Wynn, 264 N.C. App.

 250, 824 S.E.2d 210, slip op. *1 (COA18-536) (2019) (unpublished) (“Wynn I”). This

 Court concluded there was no error. See Wynn I, 264 N.C. App. 250, 824 S.E.2d 210.

 Defendant filed a “petition for discretionary review and motion in the alternative to

 remand” with the Supreme Court of North Carolina. State v. Wynn, 374 N.C. 427,

 840 S.E.2d 781 (Mem) (2020). The Supreme Court allowed the petition for

 discretionary review “for the limited purpose of remanding this case to the Court of

 Appeals for further consideration in light of this Court’s decision in State v. Golder,

 374 N.C. 238, 839 S.E.2d 782 (2020).” Id. We now take up defendant’s case “for the

 limited purpose” of considering it in light of Golder.
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 B. Factual Background

¶4 The background of this case was provided by this Court in Wynn I:

 The State’s evidence tended to show that on 14
 March 2016, the Dare County Sheriff’s Department
 received a call regarding a suspicious person on Jones
 Circle. Deputy Sheriff Andrew Creech noticed a screen
 pulled out of a window of a home, and the window was
 open; inside the house he saw defendant. Deputy Creech
 tried to coax defendant outside of the house, but he would
 not come as he claimed people were “after him.” Defendant
 was “very active in the house” and [Deputy Creech saw
 him] walking around much of the interior, heard slamming
 doors or drawers, and saw defendant pulling up his pants.
 Defendant eventually came out of the house with $2,216.00
 in cash and a white substance on and in his nose.
 Defendant told law enforcement he had a gun when he was
 running to the house – he was running from the people he
 claimed were “after him” -- but was not sure where he
 dropped it.
 The law enforcement officers called the man who
 owned the house, [Mr. Gradeless,] and he allowed them to
 search the house. Inside they found a black plastic bag
 containing smaller red plastic baggies of cocaine and
 heroin, digital scales, and a pistol magazine. The
 homeowner said none of the items belonged to him. Law
 enforcement then searched defendant’s home and found
 several bullet holes, some from shots fired from inside the
 house and some from shots fired from the outside into the
 house.
 Defendant was indicted for trafficking in heroin by
 possession, possession with the intent to sell or deliver a
 controlled substance, possession of a firearm by a felon, and
 attaining the status of habitual felon. At defendant’s trial,
 two witnesses testified that they had purchased heroin and
 cocaine from defendant, always in a little red plastic baggie
 similar to those recovered by law enforcement. A jury
 found defendant guilty of all of the charges against him;
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 defendant pled to attaining the status of habitual felon;
 and the trial court entered judgments accordingly.
 Defendant appeals.

 Wynn I at *2-3.

 II. Sufficiency of the Evidence

¶5 Defendant’s first argument on appeal challenged the sufficiency of the evidence

 against him. See id. at *3. In Wynn I, this Court dismissed defendant’s argument for

 failure to preserve the issue before the trial court. Id. at *3-6. In Golder, while

 analyzing whether a motion to dismiss was adequate to preserve the issue of

 sufficiency of the elements of the crimes, our Supreme Court held “under Rule 10(a)(3)

 and our case law, defendant’s simple act of moving to dismiss at the proper time

 preserved all issues related to the sufficiency of the evidence for appellate review.”

 Golder, 374 N.C. at 246, 839 S.E.2d at 788.

 A. Application of State v. Golder to Motion for Directed Verdict

¶6 Defendant’s attorney moved for a directed verdict at the close of the State’s

 evidence:

 “For the defense, Your Honor, at the close of the State’s
 case, we would move for a directed verdict in favor of the
 defendant. I do not care to argue that motion, however.”
 The trial court denied the motion. Defendant did not
 present any evidence and at the close of all of the evidence
 his attorney stated, “I would just renew my motions.”

 Wynn I at *3.
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

¶7 The State contends that defendant’s motions for a directed verdict do not

 suffice as a motion to dismiss pursuant to Rule 10(a)(3) as noted in Golder. See

 generally id. The State cites no law for why the two motions – a motion for directed

 verdict and a motion to dismiss – should be treated differently for purposes of Golder,

 but instead simply relies upon the argument that Golder is applicable only to motions

 to dismiss made under Rule 10(a)(3).

 A motion for directed verdict is to test the legal
 sufficiency of the evidence to take the case to the jury. This
 is a high standard for the moving party, requiring a denial
 of the motion if there is more than a scintilla of evidence to
 support the non-movant’s prima facie case. In passing on
 a motion for directed verdict, the trial court must consider
 the evidence in the light most favorable to the nonmovant,
 and conflicts in the evidence together with inferences
 which may be drawn therefrom must be resolved in favor
 of the nonmovant.

 Coates v. Niblock Development Corp., 161 N.C. App. 515, 516–17, 588 S.E.2d 492, 493

 (2003) (citations and quotation marks omitted).

¶8 “When granted, the common law motion for a directed verdict resulted in a

 judgment on the merits in either a criminal or a civil case.” Cutts v. Casey, 278 N.C.

 390, 419, 180 S.E.2d 297, 312 (1971). In State v. Clanton, our Supreme Court noted

 that a motion to dismiss and a motion for a directed verdict are “interchangabl[e]”

 terms that should be applied the same. See 278 N.C. 502, 504, 180 S.E.2d 5, 6 (1971)

 (noting “[t]o survive a motion to dismiss, or for a directed verdict of not guilty, or for
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 judgment as of nonsuit (used interchangeably in criminal prosecutions) the evidence

 must be sufficient to permit a legitimate inference the defendant committed every

 essential element of the crime charged” (emphasis added)).

¶9 Because our Supreme Court has noted a motion to dismiss and a motion for a

 directed verdict are “interchangabl[e]” terms in criminal cases, we conclude

 defendant’s motion for a directed verdict should be reviewed in the same manner as

 a motion to dismiss. See id. Accordingly, “defendant’s simple act of moving to dismiss

 at the proper time preserved all issues related to the sufficiency of the evidence for

 appellate review.” Golder, 374 N.C. at 246, 839 S.E.2d at 788.

 B. Motion for Directed Verdict

¶ 10 We thus consider whether the trial court erred in denying defendant’s motion

 for directed verdict based on insufficiency of the evidence as to “his convictions for

 possession of a firearm by a felon, trafficking in heroin by possession, possession with

 the intent to sell or deliver cocaine, and attaining the status of habitual felon.” Wynn

 I at *1.

 1. Standard of Review

 In ruling on a motion for a directed verdict or a motion to
 dismiss, the trial court must determine whether the State
 has offered substantial evidence of the defendant’s guilt on
 every essential element of the crime charged. Substantial
 evidence requires that the evidence must be existing and
 real, not just seeming and imaginary. In considering the
 evidence, the State is entitled to every reasonable inference
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 that may be drawn therefrom. Contradictions and
 discrepancies in the evidence are for the jury to decide. The
 test for sufficiency of the evidence is the same regardless of
 whether the evidence is circumstantial or direct. When a
 motion for a directed verdict involves circumstantial
 evidence in a case:
 The court must decide whether a reasonable
 inference of the defendant’s guilt may be
 drawn from the circumstances shown. If so
 the jury must then decide whether the facts
 establish beyond a reasonable doubt that the
 defendant is actually guilty.

 State v. McKenzie, 122 N.C. App. 37, 45, 468 S.E.2d 817, 824 (1996) (citations and

 brackets omitted).

 2. Possession of a Firearm by a Felon

¶ 11 Defendant contends that the trial court erred in denying his motion for directed

 verdict on the charge of possession of firearm by a felon because there was insufficient

 evidence of the existence of a firearm. “The State need only prove two elements to

 establish the crime of possession of a firearm by a felon: (1) defendant was previously

 convicted of a felony; and (2) thereafter possessed a firearm.” State v. Cunningham,

 188 N.C. App. 832, 836, 656 S.E.2d 697, 700 (2008) (citation, quotation marks, and

 brackets omitted); see N.C. Gen. Stat. §14-415.1 (2015).

¶ 12 In this case, the primary evidence of defendant’s possession of a firearm was

 his statement to the officers that he had a gun before they arrived at the house.

 “Defendant told law enforcement he had a gun when he was running to the house –
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 he was running from the people he claimed were ‘after him’ – but was not sure where

 he dropped it.” Wynn I at *2. The officers never found a gun, either in the house

 where defendant was found, in defendant’s home, or in the area outside where

 defendant said he dropped it before he entered the house.

¶ 13 The State contends sufficient evidence tended to show defendant possessed a

 firearm “because the police recovered a 9mm pistol magazine from the house

 defendant had broken into, defendant admitted to possessing a gun, and the police

 found 9mm shell casings, bullet fragments, and bullet holes in defendant’s home.”

 (Original in all caps.)

¶ 14 A pistol magazine was found in the house defendant had broken into, but a

 magazine alone is not a firearm. See N.C. Gen. Stat. § 14–415.1(a) (2015) (“For the

 purposes of this section, a firearm is (i) any weapon, including a starter gun, which

 will or is designed to or may readily be converted to expel a projectile by the action of

 an explosive, or its frame or receiver, or (ii) any firearm muffler or firearm silencer.”).

 A pistol magazine alone is not a weapon “which will or is designed to or may readily

 be converted to expel a projectile by the action of an explosive” nor is it a muffler or

 silencer. Id. As for the shell casings and bullet fragments and holes found at

 defendant’s home, there no evidence as to when a gun may have been fired or who

 fired it. Thus, the evidence presents an issue of corpus delicti. See generally State v.

 Parker, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985).
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

¶ 15 Where a defendant has confessed to a crime, this confession is not sufficient

 evidence to support a conviction unless there is “substantial independent evidence

 tending to establish” the “trustworthiness” of the confession “including facts” which

 strongly corroborate the “essential facts and circumstances embraced in the

 defendant’s confession.” Id.

 We adopt a rule in non-capital cases that when the State
 relies upon the defendant’s confession to obtain a
 conviction, it is no longer necessary that there be
 independent proof tending to establish the corpus delicti of
 the crime charged if the accused’s confession is supported
 by substantial independent evidence tending to establish
 its trustworthiness, including facts that tend to show the
 defendant had the opportunity to commit the crime.
 We wish to emphasize, however, that when
 independent proof of loss or injury is lacking, there must be
 strong corroboration of essential facts and circumstances
 embraced in the defendant’s confession. Corroboration of
 insignificant facts or those unrelated to the commission of
 the crime will not suffice. We emphasize this point because
 although we have relaxed our corroboration rule
 somewhat, we remain advertent to the reason for its
 existence, that is, to protect against convictions for crimes
 that have not in fact occurred.

 State v. Parker, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985) (emphasis added).

¶ 16 Here, the only evidence of a gun or defendant’s possession was his statement

 that he had a gun before the officers arrived at the house. The house was not his

 home or residence. No gun was found in the area where defendant claimed he had

 dropped it. There was no evidence of any gunshots fired. There was no “proof of loss
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 or injury[.]” Id. The magazine was found in Mr. Gradeless’s house, while the shell

 casings, bullet fragments and holes were found at defendant’s residence, but there

 was no evidence regarding when a gun was fired either from or into defendant’s

 residence. This evidence does not provide “strong corroboration of essential facts and

 circumstances embraced in the defendant’s confession.” Id. The magazine in

 conjunction with the shell casings, bullet fragments and holes are “insignificant facts

 or those unrelated to the commission of the crime[.]” Id.

¶ 17 It is important to note here, that without some evidence of a firearm beyond

 defendant’s own statement, whether recovery of a firearm, evidence that someone

 heard or saw gunfire, evidence that another person saw the alleged firearm, or injury

 to a person or property, there is simply no evidence the alleged crime even took place,

 and thus to convict defendant on such little evidence risks “conviction[] for [a] crime[]

 that ha[s] not in fact occurred.” Id. We conclude the trial court erred in failing to

 dismiss the charge of possession of a firearm by a felon. As such, we must vacate

 defendant’s conviction for possession of a firearm by a felon.

 3. Possession of Controlled Substances

¶ 18 As for defendant’s convictions for trafficking in heroin by possession and

 possession with the intent to sell or deliver a controlled substance, defendant
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

challenges only the element of possession. See generally N.C. Gen. Stat. § 90-95

(2015).1

 The State must prove that Defendant possessed . . .
 [a controlled substance] either actually or constructively.
 Actual possession requires that a party have physical or
 personal custody of the item. A person has constructive
 possession of an item when the item is not in his physical
 custody, but he nonetheless has the power and intent to
 control its disposition.

State v. Wirt, 263 N.C. App. 370, 373, 822 S.E.2d 668, 671 (2018) (citation and

quotation marks omitted). For purposes of constructive possession,

 the State is not required to prove actual physical
 possession of the controlled substance; proof of constructive
 possession is sufficient and such possession need not be
 exclusive. Constructive possession exists when a person,
 while not having actual possession of the controlled
 substance, has the intent and capability to maintain
 control and dominion over a controlled substance. Where
 a controlled substance is found on premises under the
 defendant’s control, this fact alone may be sufficient to
 overcome a motion to dismiss and to take the case to the
 jury. If a defendant does not maintain control of the
 premises, however, other incriminating circumstances
 must be established for constructive possession to be
 inferred.

State v. Neal, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993) (citations omitted).

North Carolina courts have issued an abundance of case law addressing the specific

1 North Carolina General Statute § 90-95 has since been amended. See N.C. Gen. Stat. § 90-
95 (2020).
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

factual nuances of constructive possession as was noted by our Supreme Court in

State v. Miller, 363 N.C. 96, 99–100, 678 S.E.2d 592, 594–95 (2009):

 Our cases addressing constructive possession have
 tended to turn on the specific facts presented. See, e.g.,
 Butler, 356 N.C. at 143–44, 147–48, 567 S.E.2d at 138–39,
 141 (finding constructive possession when the defendant
 acted suspiciously upon alighting from a bus; hurried to a
 taxicab and yelled “let’s go” three times; fidgeted and
 ducked down in the taxicab once in the back seat, then
 exited the taxicab at the instruction of police officers and
 walked back to the bus terminal without being told to do
 so, drawing officers away from the taxicab; and drugs were
 recovered from under the driver’s seat of the taxicab
 approximately ten minutes later when the cab returned
 from giving another customer a ride); Matias, 354 N.C. at
 550–52, 556 S.E.2d at 270–71 (finding constructive
 possession when officers, after smelling marijuana
 emanating from a passing automobile occupied by the
 defendant and three others, recovered marijuana and
 cocaine stuffed between the seat pad and back pad where
 the defendant had been seated, and an officer testified the
 defendant was the only occupant who could have placed the
 package there); State v. Brown, 310 N.C. 563, 569–70, 313
 S.E.2d 585, 588–89 (1984) (finding sufficient other
 incriminating circumstances when cocaine and other drug
 packaging paraphernalia were found on a table beside
 which the defendant was standing when the officers
 entered the apartment, the defendant had been observed
 at the apartment multiple times, possessed a key to the
 apartment, and had over $1,700 in cash in his pockets);
 State v. Baxter, 285 N.C. 735, 736–38, 208 S.E.2d 696, 697–
 98 (1974) (finding constructive possession when the
 defendant was absent from the apartment when police
 arrived but a search of the bedroom that the defendant and
 his wife occupied yielded men’s clothing and marijuana in
 a dresser drawer, with additional marijuana found in the
 pocket of a man’s coat in the bedroom closet); State v. Allen,
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 279 N.C. 406, 408, 412, 183 S.E.2d 680, 682, 684–85 (1971)
 (finding constructive possession when, even though the
 defendant was absent from the apartment at the time of a
 search, heroin was found in the bedroom and kitchen; the
 defendant’s identification and other personal papers were
 in the bedroom, public utilities for the premises were listed
 in the defendant’s name; and a witness testified that the
 defendant had provided heroin to him for resale).

 Id. Miller went on to explain, “These and other cases demonstrate that two factors

 frequently considered are the defendant’s proximity to the contraband and indicia of

 the defendant’s control over the place where the contraband is found.” Id.

¶ 19 In this case, the controlled substances were not found in defendant’s actual

 possession or in a domain exclusively controlled by him, and thus we must consider

 “other incriminating circumstances[,]” Neal, 109 N.C. App. at 686, 428 S.E.2d at 289,

 remaining mindful of “defendant’s proximity to the contraband and indicia of the

 defendant’s control over the place where the contraband is found.” Miller, 363 N.C.

 at 100, 678 S.E.2d at 595.

¶ 20 Here, the local sheriff’s department was called reporting a “suspicious

 person[.]” Wynn I at *2. Law enforcement “noticed a screen pulled out of a window

 of a home, and the window was open[.]” Id. “[I]nside the house [law enforcement]

 saw defendant[;]” though the home was not his. Id. “Defendant was ‘very active in

 the house’ and seen walking around much of the interior and heard slamming doors
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 or drawers[;]” id., thus, defendant’s presence was not limited to one room or particular

 spot; defendant moved throughout the house as if exercising dominion over the space.

 “Defendant eventually came out of the house with $2,216.00 in cash and a white

 substance on and in his nose.”

 The law enforcement officers called the man who
 owned the house, and he allowed them to search the house.
 Inside they found a black plastic bag containing smaller
 red plastic baggies of cocaine and heroin, digital scales, and
 a pistol magazine. The homeowner said none of the items
 belonged to him.

¶ 21 The cocaine and heroin found inside the house coupled with the white powder

 on defendant’s nose tend to show the drugs belonged to defendant, particularly in

 light of the fact that the controlled substances were packaged in red plastic baggies,

 a method used by defendant for selling drugs. The State presented sufficient evidence

 of possession of the controlled substances for both defendant’s trafficking in heroin

 by possession and possession with the intent to sell or deliver a controlled substance

 convictions. As such, the trial court did not err in denying defendant’s motion for

 directed verdict on his controlled substance charges.

 III. Evidence of Other Wrongs

¶ 22 In Wynn I, we considered another issue on appeal under Rules 403 and 404,

 see Wynn I at *6-10, but we note the Supreme Court remanded this case for the

 limited purpose of considering this case under Golder, see Wynn, 374 N.C. 427, 840
 STATE V. WYNN

 2021-NCCOA-103

 Opinion of the Court

 S.E.2d 781, and we conclude Golder applies only as to defendant’s first argument on

 appeal. As such, the Supreme Court left, and we shall too, leave intact our prior

 analysis, regarding defendant’s second argument of evidence of other wrongs.

 IV. Conclusion

¶ 23 As to defendant’s conviction for possession of a firearm by a felon, we vacate.

 As there was evidence of constructive possession of the controlled substances, we

 conclude there was no error as to defendant’s convictions and judgments for

 trafficking in heroin by possession, possession with the intent to sell or deliver a

 controlled substance, and attaining the status of habitual felon.

 VACATED IN PART; NO ERROR IN PART.

 Judges TYSON and ARROWOOD concur.